UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

IN RE:                                )
                                      )
Mirna C. Celliti,                     )    Case No. 07-02883-TOM-13
                                      )    Chapter 13
              Debtor.                 )

MEMORANDUM OPINION

This matter came before the Court on the Notice of Default (doc. no. 133) filed by D. Sims Crawford, the Standing Chapter 13 Trustee (the "Trustee") and the Opposition to Dismissal (doc. no. 134) filed by Mary Ann Manning, a secured creditor (the "Creditor"). This Court has jurisdiction under 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court has considered the arguments of counsel, the pleadings and the law and finds and concludes as follows.[1]

**Findings of Fact[2]**

The underlying dispute[3], which occurred prior to the bankruptcy filing, revolves around the extension of credit to the Debtor from the Creditor to permit the Debtor to build a new house she otherwise could not build or finance. The Debtor was introduced to the Creditor through the Debtor's sister who worked at the University of Alabama at Birmingham with the Creditor, at the time a tenured professor of English, now retired. The Creditor hired the Debtor to provide cleaning services at the Creditor's residence. At some point, during the course of the

---

[1] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters pursuant to Federal Rule of Bankruptcy Procedure 9014(c).

[2] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. See ITT Rayonier, Inc. v. U.S., 651 F.2d 343 (5th Cir. 1981); Florida v. Charley Toppino & Sons, Inc., 514 F.2d 700, 704 (5th Cir. 1975).

[3] This information, by way of background, is taken from the testimony provided over a two day trial. The basic facts are not in dispute.

1

relationship, the Creditor either offered or was approached by the Debtor and agreed to take out a construction loan, solely in the Creditor's name to provide financing for a home that the Debtor would live in.  On August 31, 2004, the Creditor took out a construction loan for $184,000.00 and signed a note to Central State Bank, this loan was paid off when the long term mortgage was entered into by the Creditor (the debt is now owned by Citimortgage).  At some point during construction in early 2005, the contractor walked off the job.  The Creditor then put up her own money to get the job completed.  On September 26, 2005, the Debtor signed two promissory notes in favor of the Creditor, one for $178,400.00 representing the construction loan that was turned into the long term mortgage, and one for $35,000.00 for the additional funds advanced by the Creditor to get the house completed after the contractor walked off the job.  The notes signed by the Debtor called for monthly payments to the Creditor of $1,069.90 and $460.00 per month, respectively.  At the time the Debtor executed the notes and mortgage to the Creditor, the Creditor signed a deed transferring the property.  The Debtor recorded the mortgage in the Jefferson County probate office on December 7, 2006, more than a year after the documents were signed.

On June 29, 2007, the Debtor filed for protection under Chapter 13 of Title 11.  On July 14, 2007, the Debtor filed her schedules and statement of financial affairs (doc. no. 12).  On Schedule A, the Debtor listed real property as her residence located at 1815 Southbrook Circle, Birmingham, Alabama 35226 with a value of $252,000.00 and no secured claim on the property. On Schedule F, unsecured, non-priority debts, the Debtor listed a disputed, unliquidated, and contingent debt to the Creditor incurred on September 26, 2005 in the amount of $1.00.  The Debt is described on that schedule as an "unperfected mortgage and promissory note."  The Debtor listed a second, disputed, unliquidated, contingent debt to the Creditor in the amount of

2

$6,110.00. The debt is also listed as incurred on September 26, 2005 for an "unperfected mortgage and promissory note."

In the Debtor's original chapter 13 plan (doc. no. 14), filed on July 14, 2007, the Debtor proposed to pay $370.00 per month to the Trustee and to pay the Creditor direct $1,529.00 per month because this debt was in dispute. The plan was amended on July 31, 2007 (doc. no. 17). In the amended plan, the Debtor proposed to pay $2,879.00 per month to the Trustee, this plan shows the Creditor as a secured creditor with a long term debt, and proposed to have the Trustee pay $1,529.60[4] per month as a continuing payment on the Debtor's mortgage from her chapter 13 plan payments and to pay $75.00 per month to catch up the alleged $4,500.00 six month arrearage on the debt (paying interest at 6.0%). The amended plan listed the total debt owed to the Creditor at $208,200.00. No amendment to the schedules was filed and at the time the amended plan was filed, listing the Creditor as a secured creditor, the schedules, as filed, still reflected the Creditor was an unsecured creditor.

On July 20, 2007, the Creditor filed a fully secured proof of claim, claim #3[5], in the amount of $222,836.46 which included an arrearage of $14,610.63. The Creditor indicated on the claim that it was secured by real property valued at $200,000.00 and attached the supporting loan documents and other documents.

On August 10, 2007, the Creditor filed a motion for relief from stay (doc. no. 20) and an objection to confirmation (doc. no. 21). The objection and the motion for relief were set for hearing on September 6, 2007 along with the Trustee's Motion to Dismiss and Objection to

---

[4] Since the Creditor owed the long term mortgage she executed, she continued to pay the note on that obligation and this payment from the Debtor was really a reimbursement to the Creditor.

[5] Claim 3 was amended on February 6, 2008 and reflects the same total outstanding debt but includes a $29,447.90 post-petition arrearage and amended the pre-petition arrearage down to $13,552.24. The value of the property was also increased to $230,000.00

3

Confirmation (doc. no. 26). On August 21, 2007 and in response to the pending objections, the Debtor filed a second amended plan (doc. no. 30). In this second amended plan, the Debtor proposed to pay $2,971.00 per month to the Trustee, increased the total debt to the Creditor to $213,700 (noting that the arrearage was disputed), with a continuing monthly payment of $1,529.60 and a fixed payment of $194.00 on $10,000.00 arrears representing seven months of arrearage.

On August 30, 2007, just prior to the scheduled confirmation hearing, the Debtor filed an objection to the Creditor's claim (doc. no. 35). The objection to claim was set for hearing on October 11, 2007 to provide thirty days notice as required. At the September 6, 2007 hearing, confirmation, the objections to confirmation and the motion for relief were all rescheduled to October 11, 2007 so that all matters could be heard at once.

At the hearing on October 11, 2007, the Court was advised the objection to claim and motion for relief were resolved. On October 31, 2007, the Debtor withdrew her objection to the Creditor's claim (doc. no. 45) and filed a third amended plan (doc. no. 46); however, no order resolving the motion for relief was submitted and, on November 2, 2007, the Creditor filed a motion asking that the motion for relief be reset for hearing and the Court reset the motion for relief for November 15, 2007.

In the third amended plan, the Debtor proposed to pay an increased monthly plan payment of $3,070.00 and again proposed for the Trustee to continue to make the monthly mortgage payments to the Creditor and a fixed payment of $194.00 per month to the Creditor for the listed $10,000.00 arrearage. The third amended plan did not resolve the Creditor's objection to confirmation and, on November 5, 2007, the Creditor filed a second objection to confirmation

4

(doc. no. 56). The objection, confirmation and the motion for relief were reset together for December 13, 2007 again so that all matters could be heard at once.

At the hearing on December 13, 2007, the motion for relief was denied conditioned upon the Debtor making monthly payments to the Trustee in an amount sufficient for the Trustee to pay the Creditor her continuing payment each month (to reimburse the Creditor for the payment she was paying to the mortgage holder), at an increased amount of $1,683.34 based on an increase in the monthly mortgage payment due. Additionally, the Debtor was directed to file another amended plan no later than December 21, 2007 and the Creditor's objection and confirmation were reset for hearing on January 17, 2008.

On December 21, 2007, the Debtor filed her fourth amended chapter 13 plan. In this plan, the Debtor proposed to make monthly payments of $3,450.00 with a continuing payment to the Creditor in the increased mortgage amount of $1,683.34 and with a fixed payment on the arrearage still at $194.00 per month. The Debtor's plan notes the continuing dispute with the Creditor and added in this fourth amended plan that the "Debtor proposes to treat the $35,000 debt to Mary Ann Manning as a general unsecured claim." Unsecured creditors were to be paid 79% of their allowed claims pursuant to the fourth amended plan. The hearing was continued until February 7, 2008.

On February 6, 2007, again just prior to the rescheduled confirmation hearing, the Debtor filed an objection to the Creditor's claim (doc. no. 86) and asserted that the claim, as filed, included an incorrect arrearage amount and that of the claim $35,000.00 of it was due to be allowed only as unsecured claim. At the hearing on February 7, 2008, the parties indicated that the matter could not be resolved and the Court entered a scheduling order setting trial for March 11, 2008 on the objection to claim. On March 10, 2008 the Creditor filed a brief in support of

5

her claim (doc. no. 101). That same day, the Debtor instituted adversary proceeding number 08-00059 against the Creditor alleging fraud and breach of fiduciary duty in addition to other claims.

At the hearing on March 11, 2008, the trial on the objection to claim went forward. The Court heard testimony from Mr. Doug Rogers, a neighbor of the Debtor's, and the Debtor. After a break in the testimony in the afternoon, the parties represented to the Court that they believed the matter could be resolved consensually. Debtor's counsel indicated that with both pre and post confirmation arrearage, of approximately $21,238.48[6], included in the plan, at $3,450.00 per month, the plan would pay 100% to unsecured claimants. The Court continued all matters to April 21, 2008 for the Debtor to file an amended plan as he indicated he would that would pay 100% to all creditors. No amended plan was filed.

At the hearing on April 21, 2008, the Court was informed that Debtor's prior counsel was no longer employed at the firm he was with and the Debtor wanted time to hire new counsel. Counsel for the Creditor had mailed a copy of a settlement proposal to the Debtor on March 13, 2008. In Court on April 21, 2008, the Debtor indicated that the "numbers were wrong" and she could not sign it "until the numbers were right" leaving the matter unsettled. The Court also noted on the record that while this matter has been pending the Trustee has not received full plan payments from the Debtor. In fact, at just about every hearing, the Court has noted on the record, and the Trustee has confirmed, that the Debtor has not made full plan payments and the payments have not been timely. This payment issue has been an on-going problem since the case was filed and the Court and the Trustee throughout the case have questioned the feasibility

---

[6] At the hearing, it was estimated that the arrearage, pre and post confirmation, totaled $48,108.48 and that the Creditor had received from the Trustee approximately $23,709.00. Subtracting the funds received by the Trustee plus two disputed payments of $1,800.00 and $1,361.00, the total arrearage as of the hearing date was $21,238.48.

6

of any plan because the Debtor has continually failed to comply with the terms of her own proposed plans. In spite of this payment issue, the Court reset all matters for May 19, 2008 and directed the Debtor to have hired her new counsel well in advance of the hearing so that new counsel would be up to speed.

Despite the Court's admonishment, on May 19, 2008, Mr. Charles Cleveland appeared as new counsel for the Debtor and informed the Court that he had just been employed. The Court continued the matters to allow Mr. Cleveland an opportunity to familiarize himself with the history of the case and reset everything for June 2, 2008 with specific instruction to the parties to either bring a settlement to the Court or to bring their calendars so that the completion of the trial could be scheduled. At the June 2, 2008, the Court was advised that there was no settlement and the Court scheduled the conclusion of the trial for June 25, 2008 with any additional pleadings or amendments to be filed by June 4, 2008.

On June 4, 2008, the Debtor filed a fifth amended plan. In the fifth amended plan, the Debtor the reduced her proposed monthly payment to $1,920.40 and proposed a payment of $402.81 per month to the Creditor and $1,427.51 a month to Citimortgage (on the Creditor's long term mortgage). In this plan, the Debtor asserts that she is assuming the mortgage between the Creditor and Citimortgage and will cure any default and denies any arrearage to the Creditor.

At the trial on June 25, 2008, the Court heard testimony from Debtor, the Creditor and Ms. Mary Lee Ransom, the Creditor's daughter. The Creditor testified that she has consistently paid Citimortgage, the note and mortgage holder, each and every month even when the Debtor has failed to pay her. At the conclusion of the trial, the Court took the matter under submission and entered an order (the 'Trial Order") (doc. no. 172) that allowed the parties to file post-trial briefs and instructed and ordered the Debtor that, while this matter was under submission, she

was to meet certain payment deadlines. Specifically, the Trial Order required the Debtor to cause a payment of $1,910.00 to be "received" by the Trustee on or before June 20, 2008 and a second payment of $1,722.50 to be received by the Trustee by July 10, 2008 and a third payment of $1,722.50 to be received by the Trustee on or before July 24, 2008. The Trial Order further provided that thereafter the Debtor was to cause no less than $1,722.50 to be received by the Trustee by the 10th and 26th of each month. The Trial Order provides that in the event the Debtor fails to cause her plan payments to be timely "received" by the Trustee while the matter is under submission then the case WILL be dismissed[7]. The Trial Order also provides that if the case is dismissed pre-confirmation, the Trustee is directed to pay the filing fee, if applicable and that the Court will award an appropriate attorney's fee to Mr. Cleveland, an appropriate amount to the two vehicle lien holders, who have been receiving only adequate protection payments while awaiting confirmation, Wells Fargo and Nissan Motor Acceptance Corporation, and an appropriate amount to the Creditor to cure any default in the continuing mortgage payment. The Court notes that before the entry of the Trial Order and in open court, the payment requirements were explained to the Debtor[8]. The Court explained the required payments to the Debtor repeatedly and in great detail. Additionally, once the Trial Order was entered copies were sent to the Debtor, her counsel, Creditor's counsel and the Trustee.

It appears that the Debtor initially violated the Court's Trial Order in July when she failed to make timely payments on either the July 10, 2008 or July 24, 2008 deadline. No notice of

---

[7] The Court, however, noted on the record that if the Court received a notice of default from the Trustee, the Court would wait at least 24 hours before acting on it to allow Debtor's counsel an opportunity to file a response. The notice of default was filed Wednesday, August 13, 2008. More than twenty-four have elapsed and, to this Court's knowledge, the Debtor still has not cured the default and the only responsive pleading filed was filed by the Creditor.

[8] Despite the fact that the Debtor works as interpreter for Shelby County, the Debtor appeared at trial to have trouble understanding opposing counsel's questions though she has no problem understanding her counsel's questions. The Court therefore went to great lengths to ensure the Debtor understood the terms of the Trial Order.`

8

default was filed. However, on August 10, 2008, the Debtor again violated the Court's July 1, 2008 order by failing to make her semi-monthly payment of $1,722.50 to the Trustee. On August 13, 2008, when still no funds were received by the Trustee, the Trustee filed his Notice of Default (doc. no. 133) and the Creditor filed an Opposition to Dismissal (doc. no. 134). No response has been filed by the Debtor but it is this Court's understanding that Debtor's counsel called on August 15, 2008 and spoke to the courtroom deputy and indicated that the Debtor had left funds with him to make a payment.

## Conclusions of Law

**I.  Dismissal**

There is no doubt that a court can enforce its own orders. Chambers v. Nasco, Inc., 501 U.S. 32 (1991). The Court's Trial Order, which the Debtor consented to, clearly sets out the Debtor's payment requirements. Chapter 13 is available only for debtors with a regular source of income and payments are to be made on a regular basis. 11 U.S.C. §§ 109, 1326. There is no dispute that the Debtor did not comply with the terms of the Court's Trial Order.

Further, section 105 of the Bankruptcy Code provides that a court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

Based on the Debtor's failure to comply with the Court's Trial Order and pursuant to section 105 and the Court's inherent power to enforce its own orders, the case is due to be dismissed. The Court has considered the objection filed by the Creditor and is sympathetic to her position. However, the only matter before the Court at this time is an objection to claim

9

requiring the Court to determine the amount owed and to determine if the Debtor's fifth amended chapter 13 plan is confirmable. At best, if this Court entered an order and the case was then dismissed, rather being dismissed outright without ruling on the pending matters, the litigation might go forward in another forum and the parties might be able to assert collateral estoppel on some of the issues. Most of the disputes, however, are based on contract law and state law claims, claims which are not necessarily best resolved in bankruptcy court. The Court recognizes that the parties invested a substantial amount of time and effort in trying this case; however, the Debtor has repeatedly failed to abide by this Court's directions and orders and specifically the payment terms of the Trial Order, payment terms she acknowledged she understood and she consented to at the June 25, 2008 hearing. Because of the Debtor's failure to comply with this Court's Trial Order, the Debtor should no longer benefit from bankruptcy protection. Based on this, the Court is left with no choice but to dismiss the case and overrule the Creditor's objection.

## II.   180-Day Injunction

The Court must also determine if a prohibition against refilling should be imposed. Section 349(a) provides:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

Section 109(g) provides:

> Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if--

> (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

It is clear the Debtor failed to abide by orders of this Court. The purpose of the imposition of this prohibition against refiling is not to punish the Debtor but to see that the policies underlying the bankruptcy system are not abused and to afford relief to creditors who have been harmed. See also Southeast Bank v. Jones, (In re Jones), 105 B.R. 1007 (N.D. Ala. 1989); In re Gros, 173 B.R. 774 (Bankr. M.D. Fla. 1994); In re Belden, 144 B.R. 1010 (Bankr. D. 1992); In re Dilley, 125 B.R. 189 (Bankr. N.D. Ohio 1991); and, In re McKissie, 103 B.R. 189 (Bankr. N.D. Ill. 1989). The Creditor in this case has been stayed from asserting her remedies as to the property or the obligation for well over a year and the arrearage has grown (regardless of what pre-petition figure is used, it is clear that the total arrearage even with credit for payments made is now great than on the petition date). The Debtor meanwhile has lived in the property throughout the pendency of this case without paying full monthly mortgage payments as they came due. The Debtor has benefited from the automatic stay at the Creditor's expense. Therefore, the Court prohibits the Debtor from refiling another bankruptcy case under any chapter for a period of 180 days from the date of the dismissal of this case.

A separate order, consistent with this Memorandum Opinion, and pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure, will be entered.

Dated this the 15th day of August, 2008.

/s/ Tamara O. Mitchell
United States Bankruptcy Judge

11